McDONALD et al. v. STANFIELD et al.
(No. 255.)

(Court of Civil Appeals of Texas. Beaumont. July 7, 1917. Rehearing Denied Oct. 10, 1917.)

1. ACKNOWLEDGMENT ☞33 — DEEDS — RECORD—EVIDENCE—DEFECTIVE ACKNOWLEDGMENT—SEAL.

A certificate of acknowledgment not bearing the seal of the notary was insufficient to admit the deed to record, and such deed was inadmissible in evidence in support of the five years statute of limitations in trespass to try title.

2. ALTERATION OF INSTRUMENTS ☞24(2) — MEMORANDUM UNDER TEN-YEAR STATUTE—DEED—EXPLANATION OF ALTERATION.

In trespass to try title, a deed, though showing upon its face that it had been altered by erasures and insertion of new matter regarding which no explanation was given, was admissible as a memorandum under the ten years statute of limitations.

3. ADVERSE POSSESSION ☞97—HOLDING BY TRESPASSER—EXTENT.

When the actual owner enters, the trespasser is thereafter confined to the land inclosed or of which he has actual pedal possession, and can acquire title only to the land occupied by him.

4. ADVERSE POSSESSION ☞16(2)—MARKING BOUNDARIES.

The mere marking of lines will not amount to a disseisin of the owner, nor give a constructive possession which will support a plea of the statute of limitations to lands not in actual possession.

5. ADVERSE POSSESSION ☞100(2)—CONSTRUCTIVE POSSESSION—UNRECORDED DEED.

Under the ten years statute of limitation, possession does not extend to the land of a deed not duly recorded.

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Suit by T. K. Stanfield and others against Mary E. McDonald and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Moody & Boyles and Stevens & Stevens, both of Houston, for appellants. H. E. Marshall, C. H. Cain, and D. J. Harrison, all of Liberty, for appellees.

BROOKE, J. This suit was an intervention filed by appellees against appellants, in an action of trespass to try title, and severed from the main suit and ordered docketed as a separate suit, with appellees as plaintiffs and appellants as defendants. Upon a trial before a jury upon special issues, judgment was rendered in favor of appellees for the land sued for.

Appellees' case is based entirely upon the

statutes of limitation. Two separate tracts of land, known as the 160-acre tract and the 104-acre tract, are in controversy, both of which are parts of a large grant to J. F. De Romayor, and are parts of a large tract out of said grant, of which the record title was conveyed to R. McDonald, on December 27, 1906, and passed under his will to appellee, Mary E. McDonald, in whom the same is still vested. Concerning the 160-acre tract, it was agreed that appellees do not claim any possession prior to July 1, 1898.

It seems at some time prior to July 1, 1898, S. K. Stanfield, the father of appellees, moved on the land and built a house, and inclosed about 30 acres, which house and inclosure have ever since remained as originally located, and S. K. Stanfield continued to reside there until his death, on August 13, 1912. The record contains no field notes or description of the land occupied by the house and inclosure. On June 5, 1902, he took a deed to the 160-acre tract from W. S. Coleman, but the inclosure remained as originally located. On January 2, 1907, R. McDonald, the owner of a tract of 9,008 acres of the Romayor grant, including the land in controversy, conveyed all of the timber on same and other lands to the Miller & Vidor Sawmill Company and T. B. Allen & Co., and also conveyed to them the exclusive right of possession to said lands.

On January 2, 1907, the Miller & Vidor Sawmill Company was located on said 9,008-acre tract and had built a commissary and was putting in a log pond, and was also building some tenant houses. First and last, they built a couple of hundred tenant houses on the tract of land, put up a hotel, built a big mill claimed to cut 100,000 feet of lumber per day, and continued to occupy that property with their mill and those houses, and to cut timber and saw it up, until about 1912 or 1913. They built about 16 miles of tramroad and spurs on the Romayor tract. T. B. Allen & Co. began their operation on the same land in '1908. They built a hardwood mill and stave mill, and continued to cut hardwood timber from all parts of the Romayor tract that they could get to, up until about 1913 or 1914.

R. McDonald died on January 21, 1910, and all of his estate passed, under his will, to appellee, Mary E. McDonald. There is no evidence as to when administration proceedings under his will were begun. S. K. Stanfield died on August 13, 1912, and there was no administration upon his estate. Appellants claim only as his heirs. This suit was filed June 14, 1913.

The jury was asked:

"Did S. K. Stanfield have and hold actual, peaceable, and adverse possession of the 160-acre tract of land described in the intervener's petition or any part thereof, cultivating, using, or enjoying the same for a period of 10 years?"

—which question the jury answered in the affirmative, and in answer to question No. 5 they found that the portion of said land inclosed by S. K. Stanfield, during the period beginning at the time the Miller & Vidor Sawmill Company or T. B. Allen & Co. took possession of a part of the Romayor grant, contained 30 acres.

The court entered judgment in favor of appellees for the entire 160 acres. No issue was submitted to the jury as to the five-year statute of limitations concerning the 160-acre tract, because the deed to S. K. Stanfield was neither acknowledged nor proven for record, and hence was not duly registered.

With reference to the 104-acre tract, it appears that on May 23, 1906, S. K. Stanfield took a deed to it from J. P. Crow, and, according to the testimony of appellees, he fenced it in April, 1907, there being no fence on it prior to that time, and kept cattle in the inclosure until the time of his death. Attached to the deed from Crow to S. K. Stanfield are two certificates of acknowledgment. As shown by the original deed, which has been sent up with the record, the first certificate bears no seal. The second certificate bears a seal but does not purport to be a certificate of the acknowledgment of the grantor in the deed.

The following issues were submitted to the jury:

"Question No. 3. Did S. K. Stanfield have and hold actual, peaceable, and adverse possession of the 104-acre tract of land described in intervener's petition, cultivating, using, or enjoying the same for a period of five years prior to the 13th day of August, 1912, claiming the same under a deed duly registered, and paying taxes thereon as same accrued?

"Question No. 4. Did S. K. Stanfield, or interveners herein, have and hold actual, peaceable, and adverse possession of the 104-acre tract of land described in interveners' petition, cultivating, using or enjoying the same for a period of five years prior to the 14th day of June, 1913, claiming the same under a deed duly registered, and paying taxes thereon as same accrued?"

The jury answered both of these questions in the affirmative, and the court rendered judgment in favor of appellees for the tract of land.

[1] The first assignment of error complains that the court erred to the prejudice of defendants in admitting in evidence the deed from J. P. Crow to S. K. Stanfield over the objections of defendants, as shown by their bill of exceptions No. 1. The proposition is:

"A certificate of acknowledgment to a deed which does not bear the seal of the notary is insufficient to admit the deed to record, and such a deed is not admissible in evidence in support of the five years statute of limitations over the objection that it is irrelevant and immaterial, and cannot form the basis of the five years statute of limitations."

We are inclined to believe that the appellants are correct in their contention.

It was held in the case of Daugherty v. Yates, 13 Tex. Civ. App. 651, 35 S. W. 939, as follows:

"The acknowledgment of the deed from Bailey Daugherty to J. S. Gilkey is herein copied. It shows it to have been made before J. B. New-

berry, 'J. P., precinct No. 2, in and for Kaufman county,' on the 3d day of June, 1876. The letters 'J. P.,' used in the connection they are, both in the body of the certificate of acknowledgment, and after Newberry's signature, evidently mean that he was the justice of the peace of precinct No. 2 of Kaufman county when the acknowledgment was made; for it is by these letters, used in this way, that such officers indicate their official character in their signature to documents requiring them. When the acknowledgment certified to was made, justices of the peace were ex officio notaries public, and, as such, authorized to take acknowledgment of deeds; but, in taking them, like all other officers, they were required to affix their official seal to their certificates of authentication, which was the seal of a notary public, and which a justice of the peace was authorized to use ex officio, and the only one, he having none as justice of the peace, independent of his being ex officio a notary public. This seal should have been affixed to the certificate of acknowledgment to entitle the instrument to record; and, if it was not, the deed was not properly recorded, and hence not constructive notice of its contents. Nor would its record, even if seen, convey such knowledge as would put a party upon inquiry. It is stated in appellee's brief that 'the seal affixed was the notarial seal.' We have searched the record in vain for a verification of this statement. While we do not question its truth, there is nothing in the record from which it can be inferred. The inference might be made if the instrument had been introduced under the provisions of article 2312, Rev. St. 1895; but the record shows that 'plaintiff proved the execution of this deed,' presumably as at common law. So no inferences, one way or the other, as to the seal of the notary being affixed to the certificate of acknowledgment, should be drawn. And, as the copy in the record does not indicate such seal, we must conclude there was none. Assuming, then, that no seal was affixed to the certificate of acknowledgment, and, therefore, that the deed was not entitled to record, we think the appellant was entitled to his improvements made on the land, if they were, after due diligence to ascertain the location of appellee's land, placed there in good faith, without knowledge of the fact, if it be a fact, that the land in controversy was the property of the appellee, and the court should have so instructed the jury."

Believing, as we do, that appellant was correct in his position, and that the certificate of acknowledgment to a deed which does bear the seal of the notary is not sufficient to admit the deed to record, and that such deed is not admissible in evidence in support of the five years statute of limitation, over objection we sustain the first assignment of error.

The second assignment of error complains that the court erred to the prejudice of defendants in admitting in evidence the deed from W. S. Coleman to S. K. Stanfield, over the objections of defendants, as shown by their bill of exceptions No. 2.

[2] The deed shows upon its face that it has been altered by erasure and insertion of new matter, of which alteration no explanation is given, and it is therefore contended that it is inadmissible in evidence. The deed was admitted as a written memorandum under the ten years statute. We think, under the circumstances, without going into detail as to the reasons for the action of the court, that the admission of this deed in evidence was correct, and this assignment is overruled.

The third, fourth, and fifth assignments of error will be grouped as a whole, and are as follows: (a) The court erred to the prejudice of defendants in refusing to give in charge to the jury the peremptory charge requested by defendants as to the 160-acre tract of land, as shown by their bill of exceptions No. 4. (b) The court erred in submitting question No. 1 to the jury, over the objections of defendants thereto, that the evidence is undisputed that S. K. Stanfield had no possession of any kind of the entire 160-acre tract, and that the only possession he had was of a small tract wholly undescribed by any evidence, and therefore no judgment could be entered by the court upon the answer, as shown by their bill of exceptions No. 8. (c) The court erred to the prejudice of defendants in submitting question No. 2 to the jury, over the objections of defendants, that the evidence is undisputed that S. K. Stanfield had no possession of any kind of the entire 160-acre tract, and that the only possession he had was of a small tract wholly undescribed by any evidence, therefore no judgment could properly be entered by the court upon the answer, as shown by their bill of exceptions No. 8.

The 160-acre tract is part of a tract of land of 9,008 acres out of the Romayor survey. The record title to this tract, as has been heretofore stated, was in R. McDonald on January 2, 1907, and is now in appellant, Mary E. McDonald. Stanfield moved on the land at some time prior to July 1, 1898, and built a house, and inclosed about 30 acres. On June 5, 1902, he attempted to purchase the 160-acre tract of which he had a part inclosed, as above stated, from W. S. Coleman. This deed was never duly registered because neither acknowledged nor proved for record. It was agreed that appellees do not claim any possession prior to July 1, 1898. Less than 10 years after that date R. McDonald, the owner of the record title of the large tract, upon which Stanfield's small inclosure was situated, went into actual possession, through his tenants, the Miller & Vidor Sawmill Company, of a part of the large tract, which possession continued until after Stanfield's death.

[3] The law, as we understand it, is that when the true owner enters upon a tract of land the trespasser is thereafter confined to the actual land inclosed, or the land upon which the trespasser has actual pedal possession; and a trespasser, under such circumstances, can acquire title only to the land actually occupied by him. To illustrate, as to the time of the occupancy of 10 years, the date of the deed from Coleman to Stanfield was June 5, 1902, but R. McDonald having died in January, 1910, the 10 years would not be completed until June 5, 1913, and, in the meantime, S. K. Stanfield died in August,

1912, which prevented the further running of the statute of limitation until after the filing of this suit. The deed accepted by Stanfield from Coleman is a general warranty deed in the usual form. Therefore, it follows, there being no administration during the 12 months' period following the death of either Stanfield or McDonald, and these periods being deducted from the 10 years' time, as above set out, the court was in error in submitting both questions Nos. 1 and 2, and was in error in failing and refusing to give in charge to the jury the peremptory charge requested by defendants, as to the 160-acre tract of land, for the reason that it was shown by computation as a matter of fact, from the admitted facts that the period, as required by law, has not elapsed. These assignments are therefore sustained.

The sixth, seventh, and eighth assignments of error are as follows: (a) The court erred to the prejudice of defendants in refusing to give in charge to the jury the peremptory charge requested by the defendants as to the 104-acre tract of land, as shown by their bill of exceptions No. 5. (b) The court erred to the prejudice of defendants in submitting question No. 3 to the jury, over the objections of defendants, that the undisputed evidence shows that after deducting the periods of time during which limitation was suspended by the deaths of S. K. Stanfield and R. McDonald, S. K. Stanfield had less than five years' possession of the tract of land mentioned in said question, as shown by their bill of exceptions No. 8. (c) The court erred to the prejudice of defendants in submitting question No. 4 to the jury, over the objections of defendants, that the undisputed evidence shows that after deducting the periods of time during which limitation was suspended by the deaths of S. K. Stanfield and R. McDonald, S. K. Stanfield had less than five years' possession of the land mentioned in said question, as shown by their bill of exceptions No. 8.

The testimony shows that, at some time prior to 1906, a man named Crow lived on the land, but he had no part of it inclosed; that on May 23, 1906, Stanfield took a deed to it from Crow, and took possession of it some time in 1906, there still being no fence on the property. On April, 1907, D. K. Stanfield testified his father fenced in 104 acres. On January 2, 1907, R. McDonald, the owner of the record title to the large tract, of which 104 acres is a part, went into actual possession, through his tenants, the Miller & Vidor Sawmill Company, of a large part of the tract. S. K. Stanfield died on August 12, 1912, and there was no administration of his estate. Less than a year after his death this suit was filed. The length of time from April, 1907, the time the first fence was built, to August 13, 1912, the date of Stanfield's death, is five years and four months. R. McDonald died on January 21, 1910.

Thereupon the statute of limitation was suspended for one year. Deducting this one year from the five years and four months' possession, which is all that is claimed by the testimony of appellees, leaves only four years and four months' possession.

It follows from this statement of the facts that appellant is correct in his contention that the court should have given a peremptory charge to the jury, with reference to the 104-acre tract of land, in favor of appellant, and that the court should not have submitted to the jury questions Nos. 3 and 4. The assignments must be sustained.

[4] There is no testimony that Stanfield had made use of land outside of his inclosure, and that it had been exclusive, neither was there testimony as to any extent of said alleged use of said land outside of said inclosure. Marking lines, as contended, is not possession. As said by the court in the case of Whitehead v. Foley, 28 Tex. 268:

"The mere marking of lines and claiming to the boundaries defined by them, without something on which to found a claim of right, will not amount to a disseisin of the owner, nor give a constructive possession which will support a plea of the statute of limitation to lands not in actual possession of the defendant."

It might be well, perhaps, to say in this connection that it would have been necessary to prove that Stanfield had made use of the land outside of his inclosure, and that there had been exclusive possession, and the extent must have been shown. Louisiana & Texas Lbr. Co. v. Kennedy, 103 Tex. 297, 126 S. W. 1111; Zapeda v. Hoffman, 31 Tex. Civ. App. 312, 72 S. W. 444; Louisiana & Texas Lbr. Co. v. Stewart, 61 Tex. Civ. App. 255, 130 S. W. 202; Stevens v. Pedregon, 106 Tex. 576, 173 S. W. 210.

[5] It also might be said that, under the ten years statute of limitation, possession does not extend to the land of a deed not duly recorded. Doom v. Taylor, 35 Tex. Civ. App. 251, 79 S. W. 1087. In the case of Holland v. Nance, 102 Tex. 177, 114 S. W. 347, which has been discussed by this court and obtained its sanction, it was held that obtaining and even recording a deed, without enlarging an inclosure, does not enlarge possession. The cases are too numerous to mention holding that possession by the owner of the record title of the larger tract restricts the possession of the trespasser to the land actually inclosed by him.

We have carefully examined the entire record in this case. There is but one difficulty, in our judgment, and that is that the record does not show the metes and bounds, nor does it contain the field notes of the 30 acres, which the testimony shows was actually inclosed, and was in the pedal possession of Stanfield and his heirs. It will therefore be necessary, in accordance with the views expressed above, that this cause be reversed, and that it be rendered for the appellants, save and except the 30 acres actually

inclosed and occupied by appellees, and that when the boundaries of same have been correctly ascertained, that said appellees have judgment for said number of acres, apparently about 30, which were actually occupied and claimed by appellees; but, in so far as the remainder of said land sued for in this cause is concerned, the judgment of the trial court is reversed and rendered in favor of appellants.