## HOUSTON OIL CO. OF TEXAS v. AINS-. WORTH et al. (No. 173–3194.)

(Commission of Appeals of Texas, Section A. March 2, 1921.)

Adverse possession ⚖107—Actual possession of part does not give constructive possession of whole tract, in absence of claim thereto.·

Actual possession of a part does not give constructive possession to 640 acres under Act 1841 (Laws of Republic, 5th .Cong. p. 167), § 17 (Paschal's Dig. art. 4624), or to 160 acres under Rev. St. 1911, art. 5676, in the absence of a claim of right to the 640 acres or 160 acres, as the case may be.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Charles H. Ainsworth against the Houston Oil Company of Texas, in which Oliver C. Ainsworth and another intervened, and suit by the Houston Oil Company of Texas against C. H. Ainsworth and others. The suits were consolidated under the title Houston Oil Company of Texas, as plaintiff, and C. H. Ainsworth and others as defendants. Judgment for defendants in the consolidated cause was affirmed (192 S. W. 614), and plaintiff brings error. Reversed and remanded.

H. O. Head, of Sherman, Parker & Kennerly, of Houston, and Oswald S. Parker, of Beaumont, for plaintiff in error.

W. R. Blain, of Beaumont, for defendants in error.

SONFIELD, P. J. Defendants in error sought recovery of 640 acres of the Uriah Davidson league in Hardin county against plaintiff in error, admittedly the owner of the record title to the league. The recovery so sought was in virtue of 10-year limitation under the act of 1841 (Laws Republic 5th Cong. p. 163), they asserting the perfecting of the title prior to the adoption of the revised statutes of 1879.

Trial to a jury resulted in a verdict in favor of defendants in error for 640 acres to include their improvements. Judgment was accordingly rendered, and commissioners appointed, who set apart to defendants in error a specific 640 acres, their report being approved by the court. On appeal, the judgment of the district court was affirmed, Conley, C. J., dissenting. 192 S. W. 614.

The evidence discloses that one Cook entered upon the land in the latter part of the year 1858, clearing a small tract and erecting some improvements. He remained upon the land about one year when he sold to one Brady, who occupied the place until the outbreak of the Civil War. The evidence clearly establishes that from and after the entry of Cook to the year 1884 a small part of the land was continuously occupied by those un-

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

der whom defendants in error claim. To complete the possession prior to the adoption of the Revised Statutes of 1879, defendants in error were dependent upon the possession of Cook and Brady.

In his dissenting opinion, Conley, C. J., sets out in full the evidence adduced as to possession, and reaches the following conclusion:

"A careful scrutiny and a close analysis of all the evidence of these witnesses wholly fails to show what improvement (other than a little house built by Cook and a little field cleared by him) either Cook or Brady had on the land, how much of a field was cleared, how much of the land was in cultivation, or that either claimed, cultivated, enjoyed, or occupied any other land than that actually improved. There is not a single circumstance in the record showing any acts incident to an appropriation by them of 640 acres. * * * The only evidence of an assertion of hostile claim, either positive or by acts indicative of appropriation, to 640 acres of land, so far as the record shows, commences with the possession of Oglesbee. Oglesbee did not go into possession of the land until in the fall or winter of 1861."

We concur in this conclusion. Nor is the conclusion seriously contested, but, rather, it is practically conceded by defendants in error, who, in their brief in the Court of Civil Appeals, state:

"The testimony as to each and all of them (those in possession) except Cook and Brady was that they claimed 640 acres and *under the law the possession of Cook and Brady extended to 640 acres.*"

The last sentence of the above statement, which we have italicized, involves the contention of defendants in error, and presents the crucial question in this case. Cook and Brady being in actual possession of a small tract of the land, will such possession extend to 640 acres in virtue of section 17, Act of 1841, art. 4624, Paschal's Digest, in the absence of a claim by them thereto?

The material part of section 17, Act of 1841, art. 4624, Paschal's Dig., reads as follows:

"Ten years of such peaceable possession and cultivation, use, or enjoyment thereof, without any evidence of title, shall give to such naked possessor full property precursive of all other claims, in and to six hundred and forty acres of land, including his, her, or their improvement, * * *."

The act of 1841 required a "peaceable possession," such possession being defined in section 14 of the act. Adverse possession was not expressly required nor defined in the act. However, in the earliest cases construing the act, our Supreme Court held that the peaceable possession must be adverse in its character. Portis v. Hill, 3 Tex. 273; Redding v. Redding's Ex'r, 16 Tex. 249; Hudson v.

Wheeler, 34 Tex. 356; Word v. Drouthett, 44 Tex. 365.

In Houston Oil Co. of Texas v. Jones, 109 Tex. 89, 198 S. W. 290, the Supreme Court, speaking through Chief Justice Phillips, said:

"While the requirement that the appropriation of the land must be commenced and continued 'under a claim of right inconsistent with and hostile to the claim of another' was first incorporated in the statute in 1879, at an early day this court announced that such claim was an essential element of adverse possession. Portis v. Hill, 3 Tex. 273. The present statutory definition of 'adverse possession,' in a word, is simply that which the court had always held it to mean and as other authorities, generally, had defined it. * * *"

To create a title through limitation under the act of 1841, as under the present statutes, mere occupancy of the land, in whole or in part, for the requisite period would not suffice. The possession must have been adverse, which involves a hostile claim, a claim of right in the possessor. The doctrine is clearly recognized and stated in Word v. Drouthett, supra, wherein the court says:

"* * * It is to be noted that it is not the peaceable occupation of the land which meets the requirement of the law, but it is the peaceable possession, the exercise of authority and dominion over it. The possession must be exclusive, or, as it is generally expressed, it must be 'actual, continued, visible, notorious, distinct, and hostile.' * * * His entry upon the land must be with intent to claim it as his own or hold it for himself; or his intention to do so, if conceived after going into possession for some other purpose, must be manifested by some open or visible act or declaration showing such purpose, in order to set the statute in motion in his favor. * * *"

In Houston Oil Co. of Texas v. Jones, supra, it is said:

"The 'claim of right' to which the statute refers simply means that the entry of the limitation claimant must be with the intent to claim the land as his own, to hold it for himself; and such must continue to be the nature of his possession. * * *"

The claim of right need not necessarily be by word of mouth, it may be "under a constructive claim arising from acts and circumstances attending the appropriation." Acts of dominion and control over the land by the claimant such as usually attend upon ownership are sufficient to constitute and to evidence the claim of right.

Except where otherwise provided by statute, one claiming title by adverse possession without color of title acquires no title to land not in his actual possession, no constructive possession arising without color of title. This rule is based upon the proposition that an entry without color of title is not an invasion or disseizin which notifies the true owner of a claim asserted by another, or which gives

him a right of action, except as to the land actually occupied. 2 C. J. 232.

The charges held erroneous in Craig v. Cartwright, 65 Tex. 413, a case strongly relied upon by defendants in error, were predicated upon the above-stated rule without reference to its modification through the provisions of section 17 of the act of 1841.

In that case the court charged the jury, in effect, that one in possession of a part of the land without a deed or memorandum in writing, defining the boundaries of his claim, could not extend his possession to 640 acres, the same being limited to the land actually inclosed. The Supreme Court held that in virtue of the act of 1841, actual adverse possession of a part would give constructive possession to the boundaries defined in the muniment of title under which the entry was made, or, if the entry was without such muniment of title, then to 640 acres.

Further, the trial court in its charge, as stated by the Supreme Court, assumed:

"That the possession, cultivation, use, or enjoyment must be not only such as will give notice to the owner if he exercises such care as the law presumes every owner to exercise, of the wrongful possession, but also such as will inform the owner of the extent and limit to which he is disseized."

Discussing this proposition, the court said:

" * * * When the possessor holds under written muniments of title, unless the law requires them to be registered, or notice otherwise given of them in some particular way, as a condition on which the holding will be held sufficient to sustain limitation, * * * based on some particular period of possession, the fact of an open, visible, substantial possession, such as an owner, or one holding under him, is alone entitled to, must operate as notice to the owner of whatever claim the possessor asserts or may assert. The same must be true, in all cases in which the law prescribes the limits to which the holding of a naked possessor shall extend, as affecting the title of the real owner."

The court was not discussing the claim of the possessor as an element of the possession which would give title, but the character of notice to the true owner of the extent of the possessor's claim. The title acquired through actual adverse possession of a part would not be affected by the fact that the owner was in ignorance of the extent of the claim. Through such possession, the owner is charged with notice of *whatever claim the possessor asserts or may assert.* It is the claim and its extent with which the owner is charged through possession of a part, and without a claim there would, of course, be nothing to which such notice could attach. Preceding the charges discussed by the court, the trial court instructed the jury that those who had been in possession must have claimed the 640 acres as their own. With this instruction the Supreme Court found no fault.

In no case to which we have been referred has it been held that actual possession of a part will give title to other land without a claim to such other land. The act of 1841 and the present statutes but extend the doctrine of constructive possession, making it applicable to those in actual possession of a part, without color of title, who assert a claim of right to the statutory amount.

One entering upon land under muniments of title, taking actual possession of a part and limiting his claim to the part so occupied, cannot, of course, perfect title through any period of occupation to the part not so claimed. His entry under such muniments of title gives him the right through actual possession of a part to claim to the extent of the boundaries as defined in his muniments of title, but without a claim there can be no adverse possession, hence, no title. So one may enter under a claim to a specific tract defined by a prior survey not evidenced by any muniment of title, and assert no claim beyond such survey. In such case, he can acquire no more than the tract claimed, though it be less than the amount designated by the statute to be acquired by a naked possessor. McCarty v. Johnson, 20 Tex. Civ. App. 184, 49 S. W. 1098.

In Webb v. Lyerla, 43 Tex. Civ. App. 124, 94 S. W. 1095, in which writ of error was denied by the Supreme Court, the court says:

" * * * While it is not required that all the land in the peaceable and adverse possession of one who seeks to prescribe under the statute should be actually inclosed or improved, yet there must be peaceable and adverse possession thereof, which necessarily postulates a claim to all of it, as declared by the court in his charge. In other words, it was never contemplated that article 3344 [article 5676, R. S. 1911], declaring that the peaceable and adverse possession of a defendant shall be construed to embrace not more than 160 acres, including the improvements, or the number of acres actually inclosed, should confer rights on such defendant where none were otherwise claimed. See Titel v. Garland (Tex. Sup.) 87 S. W. 1152; Bracken v. Jones, 63 Tex. 184. * * *"

As stated in Craig v. Cartwright, supra, the present article 5676, R. S. 1911, quoted by the court in the Webb Case, is but the incorporation into the statutes of the construction which the courts had theretofore placed upon section 17 of the act of 1841.

We conclude that actual possession of a part does not give constructive possession to 640 acres under the act of 1841, or to 160 acres under the present statutes, in the absence of a claim of right to the 640 acres or 160 acres, as the case may be. The same conclusion was reached by section B of the Commission of Appeals, in the recent cases of Durham v. Houston Oil Co. of Texas, 222 S. W. 161, and Houston Oil Co. of Texas v. Holland, 222 S. W. 546.

The amount of the land in actual adverse possession for the requisite period could be

recovered. Neither the pleadings nor evidence herein disclose the amount or location of the land so actually occupied; consequently, there is nothing upon which to base a judgment therefor. Houston Oil Co. of Texas v. Holland, supra.

We are of opinion that the judgment of the Court of Civil Appeals, affirming that of the district court, should be reversed, and the cause remanded for a new trial.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

---

⮑For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes